IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANEA LEIGH CLIMO, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 11-1339 |
| | ) Magistrate Judge Maureen P. Kelly |
| RAMON C. RUSTIN; CHARLES L. | ) |
| WALKER; MARGUERITE S. | ) |
| BONENBERGER; JEREMY W. PUGH; | ) |
| JOHN DOE and COUNTY OF | ) ECF Nos. 11, 20 |
| ALLEGHENY, | ) |
| Defendants. | ) |

OPINION

**KELLY, Magistrate Judge**

Plaintiff, Shanea Leigh Climo ("Climo"), has brought this civil rights action against

Defendants the County of Allegheny ("the County"), Ramon C. Rustin ("Rustin"), the Warden of

the Allegheny County Jail ("ACJ"), and Corrections Officers Charles L. Walker ("Walker"),

Marguerite S. Bonenberger ("Bonenberger"), Jeremy W. Pugh ("Pugh"), and John Doe ("Doe")

(collectively, "Defendants"), alleging that Defendants violated her rights under the Eighth and

Fourteenth Amendments to the United States Constitution while she was incarcerated at the ACJ.

Presently before the Court is a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

filed by the County and Rustin [ECF No. 11], and a Motion to Dismiss filed by Bonenberger and

Pugh [ECF No. 20].  For the reasons that follow, both Motions will be granted in part and denied

in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Climo was sentenced to serve an 11½ to 23 month sentence

by Judge Randall Todd of the Court of Common Pleas of Allegheny County, Pennsylvania, on

February 18, 2009, and was subsequently incarcerated at the ACJ. ECF No. 1, ¶ 37. Climo was assigned to POD 5MD where the female inmates are housed. Id. at ¶¶ 38-39.

On December 27, 2009, Climo was called into the gymnasium by Defendant Walker, who was working the 3:00 p.m. to 11:00 p.m. shift on Climo's POD. Id. at ¶ 40. When Climo arrived at the gymnasium, Walker apparently made a comment to Climo about "having her all to himself," and forcibly grabbed her hand and placed it on his genitals over his clothing. Climo immediately said "no," pulled her hand away, and went back to her POD. Id.

Approximately two hours later, Walker asked Climo to come to the gymnasium a second time. Upon arriving, Walker again forcibly grabbed Climo's right hand and placed it on his genitals over his clothing, and began to forcibly kiss her on her mouth. Climo again removed her hand, told Walker "no," and ran back to her POD. Id. at ¶ 41.

At approximately 8:00 p.m. on that same date, Walker approached Climo while she was preparing a cup of tea in the nurse's station. Walker blocked the doorway with his body thereby preventing Climo from leaving the room. Id. at ¶ 43. Walker then forcibly grabbed Climo's right hand and placed it on his genitals over his clothing and then grabbed her breasts with his right hand. As Climo pulled her hand away from Walker's genitals, he began kissing her on her mouth and forcibly placed his right hand inside Climo's pants and underwear inserting his fingers inside her vaginal cavity. Id. at ¶ 46. Walker then removed his hand from inside Climo's pants and unzipped his own pants exposing his penis. Walker then grabbed Climo's right hand and placed it on his penis until he ejaculated on her. Id. at ¶ 47. Walker then placed his hand on Climo's shoulder, forced her down in a kneeling position and inserted his penis in her mouth. Walker kept his hands on Climo's shoulders and his penis in her mouth until he ejaculated a

second time. Id. at ¶ 48. After he allowed Climo to get up and leave Walker threatened Climo not to report the incident to anyone. Id. at ¶ 49.

Climo, however, did report the incident to the Allegheny County Police and, as a result, Walker was terminated as a Corrections Officer by the ACJ on or about December 29, 2009. Id. at ¶ 50. A Criminal Complaint was filed against Walker on or about January 7, 2010, charging him with Involuntary Deviate Sexual Intercourse, 18 Pa. C.S.A. § 3123(a)(1); Institutional Sexual Assault, 18 Pa. C.S.A § 3124.2; Indecent Assault, 18 Pa. C.S.A. § 3126(a)(2); and, Recklessly Endangering Another Person, 18 Pa. C.S.A. § 2705(a). Id. at ¶ 51. Walker pled guilty to Institutional Sexual Assault, a Third Degree Felony, on November 1, 2010, and on January 20, 2011, Walker was sentenced to nine (9) months of Restrictive Intermediate Punishment or House Arrest with electronic monitoring and placed on seven (7) years of probation. Walker was also found to be a Sexual Offender and subject to the reporting requirements of Megan's Law, pursuant to 42 Pa. C.S.A. § 9795.1, for a ten (10) year period. Id. at ¶¶ 66-67.

Fearing that other corrections officers would retaliate against Climo as a result of Walker's termination and the filing of criminal charges against him, Climo was moved to the Washington County Jail on or about December 30, 2009. Id. at ¶¶ 52-53. On March 15, 2010, however, Climo was transferred back to the ACJ so she could testify at Walker's Preliminary Hearing, which was scheduled for March 17, 2010. Id. at ¶ 56. According to the Complaint, at approximately 9:30 p.m., while in the Intake Unit of the ACJ, Climo was physically assaulted by Defendants Pugh, Bonenberger and Doe, who were working the 3:00 p.m. to 11:00 p.m. shift. Id. at ¶ 57. Climo alleges that just prior to the assault, Bonenberger verbally accosted her and

then grabbed her by the neck and hair from behind and slammed Climo's face and head repeatedly into a block wall. Id. at ¶¶ 58-59. After impacting with the wall, Bonenberger drove Climo to the ground, where she continued to strike Climo's head against the floor. Climo also alleges that, while on the ground, Pugh placed a spit mask over her head, after which he, Bonenberger and Doe struck and kicked Climo numerous times as she lay handcuffed and blinded on the floor. Id. at ¶¶ 60-61. As a result of the physical assault, Climo suffered a concussion and injuries to her back, neck and left wrist, most of which she claims were not treated by the ACJ staff or medical personnel. Id. at ¶ 64. On or about March 30, 2010, Climo was transferred back to the Washington County Jail for her own protection due to both the sexual assault committed in December 2009, and the above-described retaliatory actions by Bonenberger, Pugh and Doe. Id. at ¶ 65.

Climo, who is represented by counsel, filed the instant Complaint on October 20, 2011, wherein she has brought claims against Defendant Walker for sexual assault and excessive force in violation of the Eighth and Fourteenth Amendments to the United States Constitution (Count I), and state law claims for Involuntary Deviate Sexual Intercourse, Aggravated Indecent Assault, Institutional Sexual Assault and Unlawful Restraint (Count II). Climo has also brought claims against Defendants Pugh, Bonenberger and Doe for assault and excessive force in violation of the Eighth and Fourteenth Amendments (Count III), for conspiracy in violation of the Eighth and Fourteenth Amendments (Count IV), and state law claims pursuant to 18 Pa. C.S.A. §§ 2701, 2702, 4952 and 4953, for Assault/Battery, and Intimidation/Retaliation against a Witness (Count V). Claims for Failure to Train, Implement Policies and Supervise in violation

of the Eighth and Fourteenth Amendments have also been brought against Defendants Rustin (Count VI), and the County (Count VII).

A Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) was filed by the County and Defendant Rustin on December 19, 2011, and on March 6, 2011, Defendants Bonenberger and Pugh filed a similar motion arguing that Climo has failed to state a claim. Climo has responded to both Motions which are now ripe for review.

## II.     STANDARD OF REVIEW

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In assessing the sufficiency of the complaint, the Court must accept as true all allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations; rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed]

conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## III. DISCUSSION

Climo has brought her claims pursuant to 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted) . Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423.

### A. Motion to Dismiss filed by Defendants Rustin and the County

#### 1. Fourteenth Amendment Claims

At Counts VI and VII of the Complaint, Climo faults Rustin and the County for failing to train, monitor or discipline corrections officers, failing to take adequate measures to protect inmates from sexual assault and retaliation, and for failure to provide Climo and others with adequate medical care. See ECF No. 1, ¶¶ 111-153. Climo also alleges that Rustin and the County had "a custom, policy and/or practice of failing to protect the care, custody and welfare

of inmates incarcerated at the ACJ." ECF No. 1, ¶¶ 122, 143. These allegations are said to have violated Climo's rights under the Eighth and Fourteenth Amendments to the Constitution. The County and Rustin argue that Climo's Fourteenth Amendment claims should be dismissed because they are, in essence, duplicative of her Eighth Amendment claims. The Court agrees.

> Noting its "reluctan[ce] to expand the concept of substantive due process," the Supreme Court has established the "more-specific-provision rule." *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) . . . . The Supreme Court explained the rationale behind the rule for Eighth Amendment claims in *Whitley v. Albers*, where a prisoner shot in the leg during a prison riot filed both Eighth Amendment and Fourteenth Amendment substantive due process claims against prison officials:
>
>> [T]he Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified. It would indeed be surprising if, in the context of forceful prison security measures, "conduct that shocks the conscience" or "afford[s] brutality the cloak of law," and so violates the Fourteenth Amendment, were not also punishment "inconsistent with contemporary standards of decency" and "'repugnant to the conscience of mankind,'" in violation of the Eighth. . . . [I]n these circumstances the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause.
>
> 475 U.S. at 327, 106 S.Ct. 1078 (internal citations omitted).

Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010), *cert. denied*, ___ U.S. ___, 131 S. Ct. 1614 (2011). Observing that the plaintiff's allegations "fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment," the Court in Betts held that

the plaintiff's due process claims were foreclosed by the "more-specific-provision rule."  Id. at 261.

Here, Climo's allegations that Rustin and the County violated her due process rights provided for by the Fourteenth Amendment concern Defendants' alleged failure ensure her safety and are predicated on the same facts as her Eighth Amendment claims.  Under Betts, these claims are foreclosed under the "more-specific-provision rule" and properly dismissed with prejudice.  See Albright v. Oliver, 510 U.S. 266, 273 (1994) (citation omitted) ("where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims"); Ordonez v. Yost, 289 F. App'x 553, 555 (3d Cir. 2008) ("[a]ppellant's due process clause is identical to his Eighth Amendment claim; he must bring the claim pursuant to the more explicit constitutional amendment").  See also Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)  ("[a]fter conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified").

Climo's arguments to the contrary are not persuasive.  Although Climo correctly points out that Albright states only that a plaintiff's Fourteenth Amendment claims must be *analyzed* under the more particular amendment and not that they should be dismissed, it does not negate the fact that the United States Court of Appeals for the Third Circuit has held that under these circumstances, Fourteenth Amendment claims are foreclosed by the "more-specific-provision rule."  Betts v. New Castle Youth Dev. Ctr., 621 F.3d at 261.  Moreover, the practical effect of analyzing her Fourteenth Amendment claims under the Eighth Amendment standard would be to

replicate the analysis of her Eighth Amendment claims.  This Court therefore has routinely

dismissed Fourteenth Amendment claims where addressing them would be duplicative of

analyzing the plaintiff's claims under the more particular amendment language: Goldhaber v.

Higgins, 576 F. Supp. 2d 694, 727 (W.D. Pa. 2007); Scutella v. City of Erie Bureau of Police,

2012 WL 1788136 at *4 (W.D. Pa. April 20, 2012); Rosado v. Virgil, 2011 WL 4527067 at *6

(W.D. Pa. Sept. 28, 2011); Navolio v. Lawrence Cnty., 2010 WL 522331 at *9 (W.D. Pa. Feb. 9,

2010), aff'd, 406 F. App'x 619 (3d Cir. Jan. 19, 2011); Granberry v. Chairman of Pennsylvania

Bd. of Probation and Parole, 2010 WL 486593 at *5 (W.D. Pa. Feb. 05, 2010), aff'd, 396 F.

App'x 877 (3d Cir. Oct. 6, 2010); Tindell v. Beard, 2008 WL 2704567 at *3 (W.D. Pa. June 30,

2008); Brothers v. Lawrence Cnty. Prison Bd., 2008 WL 146828 at *12 (W.D. Pa. Jan. 14,

2008); Such v. Vincent, 2007 WL 906170 at *8 (W.D. Pa. Mar. 22, 2007).[1]

Further, although Climo argues that she has asserted an "independent basis" for her

Fourteenth Amendment claims, in truth she has not.  Climo's claims that the sexual assault

violated her right to bodily integrity and that Defendants' deliberate indifference resulted in the

sexual and physical assaults are governed by the Eighth Amendment.  See Lambert v. Wolfe,

2007 WL 1830714 at *7 (W.D. Pa. June 25, 2007), citing Hovater v. Robinson, 1 F.3d 1063,

1068 (10th Cir. 1993) (a convicted prisoner has an Eighth Amendment right to be secure in her

bodily integrity and free from attack by guards); White v. Ottinger, 442 F. Supp. 2d 236, 245

---

[1] The Court also notes that three of the four cases cited by Climo to support her position that her Fourteenth Amendment claims are properly before the Court don't even mention the Fourteenth Amendment much less discuss the propriety of allowing a Fourteenth Amendment claim to go forward when the plaintiff's claims are covered by a more particularized amendment.  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997); Bielevicz v. Dubinon, 915 F.2d 845 (3d Cir. 1990); Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996). Interestingly, in the fourth case cited by Climo, the Court declined to address the plaintiff's Fourteenth Amendment due process claim finding that it was governed by the Fourth Amendment.  Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000).  In addition, the portion of the case cited by Climo merely discusses municipal liability

(E.D. Pa. 2006), quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994) ("[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment").

In addition, contrary to Climo's assertion, she has not alleged in the Complaint that she was treated differently than inmates similarly situated in violation of her right to equal protection. Rather, review of the Complaint, particularly those paragraphs cited by Climo, shows that she has allege only that she "*and* inmates similarly situated" are subject to unprovoked physical assaults and are not provided with access to proper medical care. ECF No. 1, ¶¶ 123, 124, 145, 149 (emphasis added). There is no assertion that Climo was treated differently from others nor any attempt to identify how she was treated differently, who the similarly situated individuals are or how they are similarly situated. Thus, Climo has clearly not raised an equal protection claim and no independent basis for maintaining her Fourteenth Amendment claims appears to exist. <u>See</u> <u>Perano v. Twp. Of Tilden</u>, 423 F. App'x 234, 238 (3d Cir. 2011).

## 2. Eighth Amendment Claims Against Rustin

Defendants also argue that Climo's Eighth Amendment claims brought against Rustin in his individual capacity should be dismissed because Climo has failed to allege sufficient facts to show that Rustin was personally involved in the wrongdoing. Defendants also contend that the claims against Rustin in his official capacity are properly dismissed because they are duplicative of the claims Climo has brought against the County.

"'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of

---

and whether a municipal policy or custom caused the plaintiff's injury; it does not discuss municipal liability in the

respondeat superior.'"  Evanchco v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), *quoting* Rode v.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  See Baraka v. McGreevey, 481 F.3d 187,

210 (3d Cir. 2007) (a supervisor can only be held liable if his or her own actions resulted in the

constitutional injury).  Supervisory liability will be found under one of several theories. "First,

supervisors may be liable if, with deliberate indifference to the consequences, they 'established

and maintained a policy, practice or custom which directly caused the constitutional harm.'"

Plouffe v. Cevallos, 2012 WL 1994785 at *4 (E.D. Pa. June 1, 2012), *quoting* Santiago v.

Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010).  See Argueta v. U.S. Immigration and

Customs Enforcement, 643 F.3d 60, 72 (3d Cir.  2011).  "A government policy is made when a

'decisionmaker possess[ing] final authority to establish municipal policy with respect to the

action" issues an official proclamation, policy, or edict.'"  Andrews v. City of Philadelphia, 895

F.2d 1469, 1480 (3d Cir. 1990), *quoting* Pembaur v. City of Cincinnati, 475 U.S. 469, 481

(1986).  "A course of conduct is considered to be a 'custom' when, though not authorized by law,

'such practices of state officials [are] so permanent and well settled' as to virtually constitute

law."  Id. *quoting* Monell, 436 U.S. at 690.  In either instance, the plaintiff must show that a

policymaker is responsible either for the policy or, through acquiescence, for the custom.  Id.

Second, a supervisor may be found liable where he or she "participated in violating the

plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of

and acquiesced in his subordinates' violations."  Plouffe v. Cevallos, 2012 WL 1994785 at *4,

*quoting* Santiago v. Warminster Tp., 629 F.3d at 129 n.5.  See Argueta v. U.S. Immigration and

Customs Enforcement, 643 F.3d at 72.  Under either theory, there must be both

context of the Fourteenth Amendment. Id. at 276.

contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate.  Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988), *impliedly overruled on other grounds by* Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993).

Here, Climo has alleged in the Complaint that Rustin "had a custom, policy and/or practice of failing to protect the care, custody and welfare of the inmates incarcerated at the County Jail," and that he "ratified this custom, policy and/or practice by having actual knowledge of past acts of sexual and physical assault and have acquiesced in these practices by failing to take the proper acts or measures in redressing the harm inflicted upon [Climo] and inmates similarly situated."  ECF No. 1, ¶ 122.  Climo has also alleged that since 2004, inmates of the ACJ have continually been subjected to sexual and physical assaults despite the filing of lawsuits and oral and written complaints by the inmates and their families."  ECF No. 1, ¶ 146. The measures Rustin has failed to take to ensure the safety and welfare of the inmates at the ACJ allegedly include failing to properly train and monitor the individual Defendants; failing to take adequate measures to prevent sexual and physical assaults against inmates including failing to properly place security cameras and devices; and failing to prevent male corrections officers from policing female inmates.  ECF No. 1, ¶¶ 112-115.

Viewing these allegations in the light most favorable to Climo, as the Court must at this juncture, the Court finds that they are sufficient to state a claim against Defendant Rustin insofar as he allegedly failed to protect Climo from sexual and physical assaults.  Indeed, it can be inferred from these assertions that previous complaints of sexual and physical assaults certainly

placed Rustin on notice of a pattern of assaults by his subordinates and that, by failing to take measures to prevent such assaults, such as providing proper training in matters of sexual contact between inmates and corrections officers, placing security cameras in proper places, and preventing male corrections officers form policing female inmates, Rustin acquiesced to the custom and/or his subordinates violations.

To the extent, however, that Climo has alleged that Rustin has failed to take adequate measures to prevent corrections officers from retaliating against inmates and failed to provide Climo with access to mental health and medical treatment, her claims fail.

Not only has Climo failed to allege that Rustin acted, or failed to act, pursuant to a custom or policy in these respects but she has failed to allege any facts from which it could be inferred that there has or had been a pattern of retaliatory actions or that Rustin otherwise knew that inmates were being retaliated against. Nor has Climo alleged that Rustin was aware that the measures in place to prevent retaliation were inadequate or what other measures Rustin should have taken to prevent retaliation. See Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60 at 72, 74, 75 (finding that "boilerplate allegations mimicking the purported legal standards for liability" need not be accepted as true noting the plaintiffs' failure to identify in the complaint "what exactly Appellants should have done differently" with respect to specific training programs and other matters); Whitfield v. City of Philadelphia, 587 F. Supp. 2d 657, 667 (E.D. Pa. 2008) (finding that the plaintiffs' conclusory allegations that the defendants "failed in their duties to set policies and procedures to instruct, teach and/or otherwise direct their subordinates to avoid violations of the Constitution" were insufficient to state a claim for supervisory liability).

Similarly, with respect to her claims that Rustin failed to provide her with access to mental health services or adequate medical care following the assaults, Climo has not alleged any facts to suggest that she asked for medical or mental health care or that Rustin was otherwise aware that she needed mental health or medical care but nevertheless declined to provide such care. Absent such facts, Climo invites the Court to simply speculate that Rustin was deliberately indifferent to Climo's constitutional rights. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (Deliberate indifference is more than a mere lack of ordinary due care. Rather, it is a state of mind equivalent to a reckless disregard of a known risk of harm"); Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) ("[t]he knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of excessive risk; it is not sufficient that the official should have been aware"). Under these circumstances, Climo has failed to state a claim against Rustin individually for failing to prevent corrections officers from retaliating against inmates or for failing to provide Climo with mental health or medical treatment. These claims therefore will be dismissed without prejudice to filing am Amended Complaint.

The Court also finds that Climo's claims brought against Rustin in his official capacity are properly dismissed.

The United States Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). See McCauley v. Univ. of the Virgin Islands, 618 F.3d 232, 241 (3d Cir. 2010). Thus, where the government entity for which the individual defendants work is a

named defendant, claims against individual defendants in their official capacities may be dismissed as being redundant. Burton v. City of Philadelphia, 121 F. Supp. 2d 810, 812 (E.D. Pa. 2000), *citing* Hafer v. Melo, 502 U.S. 21, 25 (1991). See Kentucky. v. Graham, 473 U.S. 159, 167 n.4 (1985) ("[t]here is no longer a need to bring official-capacity actions against local government officials, for under Monell [v. Dept. of Social Services, 436 U.S. 658 . . . (1978)] . . . local government units can be sued directly . . ."). See also Schor v. North Braddock Borough, 801 F. Supp. 2d 369, 376-377 (W.D. Pa. 2011) ("any claims against the [individual defendants] in their official capacities, are redundant and unnecessary"); Satterfield v. Borough of Schuylkill Haven, 12 F. Supp. 2d 423, 432 (E.D. Pa. 1998) ("[b]y bringing official capacity suits against these three Defendants and against the Borough itself, the Plaintiff has essentially named the Borough as a defendant four times").

By bringing claims against the County and Rustin in his official capacity Climo has, in essence, named the County as a defendant twice. As such, Climo's claims brought against Rustin in his official capacity are redundant and are dismissed with prejudice.

### 3. Eighth Amendment Claims Against the County

Finally, Defendants argue that Climo's claims brought against the County at Count VII of the Complaint should be dismissed for failure to state a claim.

It is well settled that settled that a municipality may not be held liable under Section 1983 based on a theory of *respondeat superior* or merely because its employees may have acted unconstitutionally. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978). Rather, a municipality may only be found liable for their own illegal acts or where the plaintiff is able to identify a municipal "policy" or "custom" that caused the constitutional

15

violation.  <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 403 (1997).  As previously discussed,

> [a] government policy or custom can be established in two ways. Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 . . . (1986).  A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law.  *Monell*, 436 U.S. at 690. . . .
>
> In either of these cases, it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom.

<u>Andrews v. City of Philadelphia</u>, 895 F.2d at 1480.  <u>See</u> <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 583–84 (3d Cir. 2003).  Even where a municipal policy or custom has been identified, however, the plaintiff must demonstrate that the municipality has acted with "deliberate indifference" to the plaintiff's constitutional rights.  <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1047, 1059 (3d Cir.1991).  Mere negligence is not enough.  <u>See</u> <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. at 404 ("[t]he plaintiff must demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged") (emphasis in original); <u>Berg v. Cnty. of Allegheny</u>, 219 F.3d 261, 276 (3d Cir. 2000).

In this case, having already found that Climo has failed to set forth sufficient facts from which it can be inferred that Rustin is liable to her for failing to take adequate measures to prevent corrections officers from retaliating against inmates and for failing to provide Climo with access to medical and mental health treatment, it follows that the County cannot be held liable for these alleged failures either.  <u>See</u> <u>Andrews</u>, 895 F.2d at 1481 ("even in 'custom' type cases, it is impossible on the delivery of a kick to inculpate the head and find no fault with the

foot").  Thus, to the extent that Climo seeks to hold the County liable for failing to prevent retaliation and failing to provide mental health and medical treatment, those claims are dismissed as well, albeit without prejudice to filing an Amended Complaint.

Climo also alleges in Count VII of the Complaint, however, that the County "had a custom, policy and/or practice of failing to protect the care, custody and welfare of the inmates incarcerated at the County Jail," and that the county "ratified this custom, policy and/or practice by having actual knowledge of past acts of sexual and physical assault and has acquiesced in these practices . . . ."  Climo goes on to state that "[u]pon information and belief, since 2004 and through the present time, inmates of the [ACJ] have been made the subjects of both sexual and physical assaults by corrections officers . . . . [which] have continued despite the filing of lawsuits, and oral and written complaints . . . ."  ECF No. 1, ¶¶ 143, 144.  In addition, Climo alleges that the County, like Rustin, failed to protect the welfare of the inmates at the ACJ by failing to properly train and monitor the actions of the individual Defendants; failing to take adequate measures to prevent sexual and physical assaults against inmates including failing to properly place security cameras and devices; and failing to prevent male corrections officers from policing female inmates.  ECF No. 1, ¶¶ 130-140.

The Court finds that these assertions are sufficient to state a claim against the County for allegedly failed to protect Climo from sexual and physical assaults.  Having alleged that repeated sexual and physical assaults of inmates have been the subject of complaints and lawsuits since 2004, it can be inferred that Rustin and, therefore, the County had notice of a pattern of assaults and that, by failing to take the measures alleged to prevent such assaults, the County acquiesced to the alleged custom.  As such, Defendants' Motion with respect to these claims is denied.

**B.      Motion to Dismiss filed by Defendants Bonenberger and Pugh**

Climo has brought claims against Defendants Bonenberger and Pugh for assault and excessive force in violation of the Eighth and Fourteenth Amendments (Count III); for conspiracy in violation of the Eighth and Fourteenth Amendments (Count IV); and state law claims pursuant to 18 Pa. C.S.A. §§ 2701, 2702, 4953 and 4953 for Assault/Battery, and Intimidation/Retaliation against a Witness (Count V), all of which Defendants argue should be dismissed for failure to state a claim.

**1.      Fourteenth Amendment Claims**

Defendants initially argue, as did the County and Rustin, that Climo's Fourteenth Amendment claims brought at Counts III and IV should be dismissed because they are, in essence, duplicative of her Eighth Amendment claims.   Again, the Court agrees.

Climo's claims that Bonenberger and Pugh violated her right not to be subjected to excessive force as provided for by the Fourteenth Amendment are predicated on the same facts as her Eighth Amendment claims.  Not only is the Eighth Amendment "the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified," Graham v. Connor, 490 U.S. at 395; Brooks v. Kyler, 204 F.3d at 106, but the Court has already found that Climo's Fourteenth Amendment claims are foreclosed under the "more-specific-provision rule" enunciated by the United States Supreme Court.  See Cnty. of Sacramento v. Lewis, 523 U.S. at 843-44; United States v. Lanier, 520 U.S. at 272 n.7; Betts v. New Castle Youth Dev. Ctr., 621 F.3d at 260-61.  Climo's due process claims therefore are properly dismissed with prejudice.

##### 2.    State Law Claims

Seeking to invoke this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a),

Climo has brought state law claims against Bonenberger and Pugh for simple assault, aggravated

assault, intimidation of a witness or victim and retaliation against a witness or victim pursuant to

18 Pa. C.S.A. §§ 2701, 2702, 4952 and 4953.  Specifically, Climo has alleged in the Complaint

that Bonenberger and Pugh "committed the criminal offenses of Aggravated and/or Simple

Assault and Intimidation of and Retaliatory acts against a Witness," and that they acted with

malice and reckless disregard "while committing the above-stated offenses in violation of

Pennsylvania law, to wit, Title 18 Pa. C.S.A. §§ 4952, 4953, 2701, 2701."  ECF No. 1, ¶¶ 106,

107.

Defendants argue that these claims should be dismissed because they are criminal

offenses for which there is no private right of action and no civil remedy.  Indeed, Title 18 of

Pennsylvania's Consolidated Statutes is known as the "Crimes Code," which sets forth conduct

that is deemed criminal and provides for criminal penalties for their violation.  18 Pa. C.S.A. §

101, *et seq.*  See 18 Pa. C.S.A. §§ 1103, 1104, 2701(b), 2702(b), 4952(b), 4953(b).  Because

Climo cannot recover civil damages for alleged violations of these criminal statutes, these claims

are not properly before the Court and are not subject to this Court's supplemental jurisdiction.

See Marlow v. Doe, 2010 WL 3942848 at *3 (W.D. Okla. Aug. 31, 2010) (finding that alleged

violations of state criminal laws provides no basis for exercising supplemental jurisdiction in

federal court); Musilli v. Googasian, 2006 WL 3030974 at *5 (E.D. Mich. Oct. 23, 2006)

(declining to exercise supplemental jurisdiction over claims brought pursuant to a criminal

statute for which there is no civil remedy).  See also Shaw v. Neece, 727 F.2d 947, 949 (10th Cir.

1984) ("a plaintiff cannot recover civil damages for an alleged violation of a criminal statute");
Fiorino v. Turner, 476 F. Supp. 962, 963 (D. Mass. 1979) (finding that violations of criminal statutes do not give rise to a civil cause of action); U.S. ex rel. Savage v. Arnold, 403 F. Supp. 172, 173 n.1 (E.D. Pa. 1975) (finding that the criminal statutes upon which the plaintiff based his complaint do not allow for a civil remedy).

Moreover, Climo acknowledges in her brief submitted in opposition to Defendants' motion that the claims brought in the Complaint against Bonenberger and Pugh for assault, battery and intimidation of and retaliatory acts are predicated on Pennsylvania criminal statutes. ECF No. 1, pp. 8, 9. Climo nevertheless argues that she is bringing her pendent state law claims under a theory of tort liability and that she "has a right to assert such claim[s] via 28 U.S.C. §1367(a), much like the plaintiff did in Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996)."

The difficulty with Climo's argument is two-fold. First, the opinion in Beck does not even mention Section 1367, much less permit the plaintiff to bring criminal claims against the defendants in that case. Second, it is well established that a plaintiff may not amend the complaint through a brief submitted in opposition to a motion to dismiss. See Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir.1988). Because it is clear from the instant Complaint that Climo has brought her state law claims pursuant to Pennsylvania criminal statutes, those claims are not subject to the Court's supplemental jurisdiction and will be dismissed without prejudice to filing an Amended Complaint raising any appropriate state law tort claims.

### 3. Eighth Amendment Excessive Force Claim

Defendants contend that Climo's claims brought against them at Count III for using excessive force should be dismissed because "[t]he Complaint identifies that the Defendants found plaintiff to be 'disruptive' and 'turned on' the Defendants in a 'threatening way,'" and because the use of spit masks by corrections officers has been found not to violate the Eighth Amendment. ECF No. 21, p. 8.

The Eighth Amendment's prohibition on "cruel and unusual punishment" protects prisoners from the use of excessive force or the unnecessary and wanton infliction of pain that offends contemporary standards of decency by prison officials. Betts v. New Castle Youth Dev. Ctr., 621 F.3d at 256; Adderly v. Ferrier, 419 F. App'x 135, 138 (3d Cir. Mar. 10, 2011). See Hudson v. McMillian, 503 U.S. 1, 8–9 (1992).

> When reviewing Eighth Amendment excessive force claims, we must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *[Hudson, 503 U.S.]* at 7 . . . . Whether the force applied was excessive requires the examination of several factors outlined by the Supreme Court in *Whitley v. Albers*, 475 U.S. 312, 321 . . . (1986), including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Adderly v. Ferrier, 419 F. App'x at 138. See Brooks v. Kyler, 204 F.3d at 106.

Climo has alleged in the Complaint that when she was brought back to the ACJ to appear for Defendant Walker's preliminary hearing she was verbally accosted by Bonenberger, who then grabbed Plaintiff by the neck and hair from behind and slammed her face and head repeatedly into a block wall; that Bonenberger then drove Plaintiff to the ground, where she continued to

strike Plaintiff's head against the floor; and that while on the ground, Pugh placed a spit mask over Plaintiff's head; and that Pugh and Bonenberger continued to strike and kick Plaintiff while blinded and handcuffed on the floor; that Pugh, Bonenberger and Doe acted with malice and in willful, wanton and reckless disregard when they, in an unprovoked manner, inflicted serious bodily injury upon Plaintiff; that their conduct was unwarranted, unjustifiable, punitive and in retaliation for Plaintiff's anticipated testimony against Defendant Walker; that Pugh and Bonenberger acted with malice and deliberate and reckless indifference to her federally protected right to be free from physical assaults while in the care and custody of the ACJ; and that as a result of the physical assault, Plaintiff suffered a concussion and injuries to her back, neck and left wrist, as well as a number of psychological impairments. ECF No. 1, ¶¶ 56-61, 64, 87-92.

Climo has therefore alleged that the assault was not only unprovoked and designed to retaliated against and/or punish Climo for testifying against Defendant Walker but that Bonenberger and Pugh acted with malice and in willful, wanton and reckless disregard to her Eighth Amendment rights. Viewed in a light most favorable to Climo, under these circumstances there was no disturbance to quell and no threat to the staff and, thus, no need to use any force. Moreover, once Climo was on the ground, handcuffed and her head covered with a spit mask, the need for force, even if initially called for, appears to have been eliminated; yet, according to the Complaint, Defendants continued to punch and kick her. Coupled with the extent of the injuries Climo claims to have suffered, the Court finds that she has clearly stated a plausible claim for excessive force against Bonenberger and Pugh. See ECF No. 1, ¶¶ 64, 91-92.

In so finding, the Court necessarily finds Defendants' argument to the contrary unpersuasive. Citing to only a portion of one sentence in the Complaint, Defendants argue that

the use of force was justified because, according to the Complaint, Defendants found that

Plaintiff was "disruptive" and "turned on" the Defendants in a "threatening way."  ECF No. 21,

p. 8.   Viewed in context, however, Climo's allegation is that "the conspiracy was continued by

Defendants Pugh and Bonenberger when they made *false* statements on Form 115 RVSD by

stating that Plaintiff was "disruptive" and "turned on" the Defendants in a "threatening way."

ECF No. 1, ¶ 100 (emphasis added).  If, indeed, Climo can establish that Defendants' accusations

against her were false, the need for using force against her remains unwarranted.  Under these

circumstances, Defendants' Motion in this regard is properly denied.

### 4.    Eighth Amendment Conspiracy Claim

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that

persons acting under color of state law conspired to deprive him of a federally protected right."

Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir.1999), *superseded by*

*statute on other grounds as stated in* P.P. ex rel. Michael P. v. West Chester Area Sch. Dist., 585

F.3d 727, 730 (3d Cir. 2009).  Establishing the existence of a conspiracy requires concerted

action and the existence of an agreement.   Watson v. Sec'y Pa. Dep't of Corr., 2011 WL 2678920

at *5-6 (3d Cir. July 8, 2011), *citing* Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533

(10th Cir.1998).  Because "'the linchpin for conspiracy is agreement' . . . concerted action,

without more, cannot suffice to state a conspiracy claim."  Id. at 6, *quoting* Bailey v. Bd. of Cnty.

Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992).  See Startzell v. City of Phila., 533 F.3d 183,

205 (3d Cir. 2008), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970) ("[t]o

constitute a conspiracy, there must be a 'meeting of the minds'").

Thus, in order to state a plausible claim for conspiracy, the plaintiff must plead the facts of the conspiracy with particularity, identifying the precise conduct giving rise to the claim. Houghton v. Dauphin Cnty. Emergency Mgmt. Agency, 2007 WL 1200133 at *3 (M.D. Pa. April 20, 2007). "Sufficiently particularized pleadings will include '(1) the period of the conspiracy, (2) the object of the conspiracy, and (3) certain actions of the alleged conspirators taken to achieve that purpose.'" Id., *quoting* Aguilar v. Pa. Apple Mktg. Program, 2006 WL 167820 at *5 (M.D. Pa. Jan. 19, 2006).

In the instant case, Climo has alleged in the Complaint that "on March 15, 2010, Pugh and Bonenberger met, discussed, planned and/or otherwise agreed to conspire to violate [Plaintiff's] Eighth and Fourteenth Amendment rights to be free from the use of excessive force;" that on March 15, 2010, Bonenberger and Pugh were working the 3:00 p.m. to 11:00 p.m. shift at the ACJ and were at the Intake Unit; that the conspiracy was formed when Pugh and Bonenberger learned of Plaintiff's identity and of her planned testimony against Defendant Walker; that the conspiracy was carried out on March 15, 2010, at approximately 9:30 p.m. when Plaintiff was leaving the Intake Unit at the ACJ; that Bonenberger stated to the Plaintiff at that time, "[w]here do you think you're going? Just because you worked on 5 MD before you left, doesn't mean you can just come back and work there again. We should rape you again for coming back here bitch;" that Plaintiff was then physically assaulted by Bonenberger and Pugh; that Bonenberger grabbed Plaintiff by the neck and hair from behind and slammed her face and head repeatedly into a block wall; that Bonenberger then drove Plaintiff to the ground, where she continued to strike Plaintiff's head against the floor; and that while handcuffed on the ground, Pugh placed a spit mask over Plaintiff's head; and that Pugh and Bonenberger continued to strike

and kick Plaintiff. ECF No. 1, ¶¶ 56-61; 96-98. Climo also alleges that the conspiracy continued when Pugh and Bonenberger made false statements on Form 115 RVSD by stating that Plaintiff was "disruptive" and "turned on" the Defendants in a "threatening way." ECF No 1, ¶ 100.

In the Court's view, these assertions are sufficiently particularized to withstand a motion to dismiss. Climo has not only identified the specific period of the conspiracy but has alleged facts from which it can be inferred that the object of the conspiracy was to retaliate against Climo for reporting the sexual assault by Walker. Climo has also pled with great specificity the actions taken by Defendants to achieve that purpose. As such, Defendants' motion in this respect is denied as well.

IV.    **CONCLUSION**

For the foregoing reasons, the Motion to Dismiss by County of Allegheny and Ramon Rustin [ECF No. 11] is granted in part and denied in part. With respect to Climo's Fourteenth Amendment claims brought against Rustin and the County, the Motion is granted and those claims are dismissed with prejudice. As to Climo's Eighth Amendment claims brought against Rustin in his official capacity, the Motion is granted and those claims are also dismissed with prejudice. As to Climo's Eighth Amendment claims brought against Rustin and the County, insofar as they are based on their alleged failure to take adequate measures to prevent corrections officers from retaliating against inmates at the ACJ and their failure to provide Climo with access to mental health and medical treatment following the assaults, the Motion is granted and those claims will be dismissed without prejudice to filing an Amended Complaint. The Motion is denied in all other respects.

The Motion to Dismiss by Pugh and Bonenberger [ECF No. 20] will be granted in part and denied in part as well. The Motion is granted with respect to Climo's Fourteenth Amendment claims, which are dismissed with prejudice. As to Climo's State Law claims, the Motion is granted without prejudice to filing an Amended Complaint. The Motion is denied in all other respects.

An appropriate Order will follow.

/S/ MAUREEN P. KELLY
MAUREEN P. KELLY
United States Magistrate Judge


Dated: August 31, 2012

cc:     All counsel of record via CM/ECF